IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES INTERNATIONAL TRADE COMMISSION,<br><br>  Petitioner,<br><br>v.<br><br>MERLE W. RICHMAN, III, ESQ.<br><br>  Respondent. | Case No.: 23--mc-0085-CKK-RMM |

**RESPONDENT'S RESPONSE TO THE ORDER TO SHOW CAUSE AS TO WHY THE PETITION TO ENFORCE ADMINISTRATIVE SUBPOENA SHALL NOT BE GRANTED**

Pursuant to this Court's September 29, 2023, Order to Show Cause, ECF No. 7, Respondent Merle W. Richman, III, Esq. ("Mr. Richman" or "Respondent") respectfully submits this cause in writing why the Petition for an Order to Enforce Administrative Subpoena filed by the United States International Trade Commission ("ITC" or "Petitioner"), ECF No. 1, under 9 U.S.C. § 1333(a) and (b) for the production of documents and for the taking of a deposition, for use in administrative proceeding under 19 U.S.C. § 1337 shall not be granted.

**BACKGROUND**

The Petitioner brought this action to enforce a subpoena issued at the request of private parties—respondents ("ITC Respondents") in the *Matter of Certain Dermatological Treatment Devices and Components Thereof*, Investigation No. 337-TA-1356, pending before the ITC ("ITC Proceedings"). The ITC initiated the ITC Proceedings upon a complaint brought by Serendia, LLC ("ITC Complainant"), who alleged that ITC Respondents imported in the United States certain devices that infringe upon certain patents owned by the ITC Complainant. In response, ITC Respondents asserted that the patents are unenforceable and requested that the ITC issue a

subpoena to Mr. Richman, seeking to obtain information allegedly supporting their allegations. Mr. Richman was a prosecuting attorney for the patents at issue. After the ITC issued the subpoena, ITC Respondents attempted to serve it by express courier service and personal delivery to the address where Mr. Richman no longer resided. After several unsuccessful attempts to serve the subpoena, the ITC initiated this action.

Mr. Richman is not a party to the ITC Proceeding. He is an attorney licensed in California. Declaration of Merle W. Richman, III, Esq. ("Richman Decl.") ¶ 5. He moved out of California on or about May 1, 2023, just before the service attempts were made. *Id.* ¶ 7. Presently, he resides in New Mexico and is employed at a federally funded research facility located on a military base. *Id*. ¶ 9. He has not been employed at the University of California San Diego since he moved to New Mexico. *Id.* ¶ 8. He has an underaged daughter who, at the relevant time, resided in California. *Id.* ¶ 11. Mr. Richman's wife is a flight attendant who is often away for several days at a time for international flights. *Id*. ¶ 12. As discussed below, all of the service attempts failed because Mr. Richman moved out from the address where the subpoena was attempted to be served.

Accordingly, the subpoena should not be enforced because Mr. Richman was never served. He was not served in fact, because ITC Respondents attempted to make service to the address where Mr. Richman no longer resided. He was also not served because the manner of service was invalid—under the D.C. Circuit precedent, a subpoena requires personal service, and ITC Respondents never served Mr. Richman personally. As such, Mr. Richman respectfully requests that the Court order the ITC Respondents to serve the subpoena personally and allow him sufficient time after service to move to quash or limit the subpoena.

2

**ARGUMENT**

**I.    The Tariff Act Is Silent as to Manner of Service of Subpoena**

The ITC asserts that it has the power to enforce subpoena based on section 333 of the Tariff Act of 1930 (the "Tariff Act"). 19 U.S.C. § 1333. ECF No. 1-1 at 3, n.4; *see also United States ITC v. ASAT, Inc.*, 411 F.3d 245 (D.C. Cir. 2005). The Respondent does not dispute that the Tariff Act provides such powers. However, Respondent objects to the manner of service of the subpoena via express delivery or any means other than personal service.

The law is silent as to the manner of service of subpoenas. The legislative history of the Tariff Act is silent on that issue as well.[1] Similarly, unlike some other statutes, the Tariff Act does not have a provision concerning the manner of service of process. *See, e.g.*, 15 U.S.C. § 45(f). Likewise, neither Section 335, which grants the ITC broad rulemaking authority, nor Section 337, which authorizes the ITC to conduct investigations, such as the one at issue here, includes specific provisions authorizing or precluding the service of a subpoena by means of a courier service or by leaving it at the place of abode. *See* 19 U.S.C. § 1335 and 1337. Despite the lack of a clear legislative mandate, the ITC promulgated regulations that authorize the service of process or other documents by regular mail, email, express delivery, and other means. 19 C.F.R. § 201.16.[2]

---

[1] Section 333 of the Tariff Act of 1930 was borrowed from the Tariff Act of 1922. *See* H.R. Doc. No. 71-23, at 157 (1929). In turn, it appears that the Tariff Act of 1922 borrowed the relevant power of subpoena provisions of what would eventually become Section 333 from a bill establishing a tariff board. 61 Cong. Rec. 3765 (1911). Notably, in the debates, Sen. Heyburn expressed his deep concern about the unbounded delegation of the duties vested in Congress by the Constitution to what he called an "irresponsible board." *Id.*; *see generally id.* at 3765-67.

[2]      Service of process and other documents.

   (a) By the Commission. Except when service by another method shall be specifically ordered by the Commission, the service of a process or other document of the Commission shall be served by anyone duly authorized by the Commission and be effected —

Although the regulations are silent as to whether they apply to the service of third-party subpoenas, the ITC asserts that they do.

## II.     D.C. Circuit Precedent Requires Personal Service of Subpoena

Where the statute does not contain explicit authorization for the mode of service of the subpoena, the D.C. Circuit has held that the agency must follow service procedures established by Rule 45 of the Federal Rules of Civil Procedures. *FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300 (1980). In so holding, the court explained that the person subject to the subpoena is neither a defendant nor accused in the investigation but a third-party witness. *Id*. at 1310-11. Therefore, the subpoena should not be viewed as merely a "summons giving notice of a complaint" but a "classic exercise of compulsory process, intended to secure the personal

---

(1) By mailing, delivering, or serving by electronic means a copy of the document to the person to be served, to a member of the partnership to be served, to the president, secretary, other executive officer, or member of the board of directors of the corporation, association, or other organization to be served, or, if an attorney represents any of the above before the Commission, by mailing, delivering, or serving by electronic means a copy to such attorney; or

(2) By leaving a copy thereof at the principal office of such person, partnership, corporation, association, or other organization, or, if an attorney represents any of the above before the Commission, by leaving a copy at the office of such attorney.

(3) By using an express delivery service to send a copy of the document to the principal office of such person, partnership, corporation, association, or other organization, or, if an attorney represents any of the above before the Commission, by serving the attorney by express delivery . . ..

19 C.F.R. § 201.16.

appearance of and production of documents by an otherwise unwilling witness through the threat of judicial sanctions for noncompliance." *Id*. at 1311. That distinction is critical and material—

> When an agency serves a party with notice of the pendency of an action, it thereby supplies the recipient with information upon which he may base a decision to act or not. When an agency serves compulsory process upon a third-party witness, regardless of the technique of service employed, it effectively compels that witness to do something and threatens him with sanctions should he choose not to comply.

*Id*. When the respondent is served with a copy of the complaint, they have the power to present evidence and negotiate with the agency or opposing parties or proceed with administrative challenges and subsequent rights to appeal the administrative decision to the district court, the court of appeals, or the Supreme Court (if the Court grants certiorari) until the decision is final. *Id*. However, "when a witness is served with compulsory process in the form of an investigatory subpoena," they become subjected immediately to "the full enforcement power of the federal courts" *Id*. Disobedience may result in monetary penalties and contempt charges. *Id*. at 1311-12.

The distinction between service of process and service of subpoena is also reflected in the court rules. Where Rule 4 for service of process provides for a number of alternative means of service, Rule 45 for service of subpoena expressly limits service to personal service only. *Id*; see Fed R. Civ. P. 4 and 45. Criminal rules also provide for a personal service of subpoena. Fed. R. Crim. P. 17(d).[3] It is hard to imagine a situation where Congress, by silence, authorized one of the

---

[3]
> A marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena. The server must deliver a copy of the subpoena to the witness and must tender to the witness one day's witness-attendance fee and the legal mileage allowance. The server need not tender the attendance fee or mileage allowance when the United States, a federal officer, or a federal agency has requested the subpoena.

executive agencies to serve a subpoena by email or express delivery where the Department of Justice is expressly limited to personal service of subpoena. If Congress had an intention for the ITC to allow the service of subpoena by mail, express delivery, or email, it would have easily provided for that.

Even though *Compagnie de Saint-Gobain-Pont-A-Mousson* was decided in the context of service upon deponents in foreign countries, its rationale applies with equal force to the domestic service of process. The objective of protecting the rights of a third party from the "classic exercise of compulsory process, intended to secure the personal appearance of and production of documents by an otherwise unwilling witness through the threat of judicial sanctions for noncompliance" is relevant to the domestic situation as well. *Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d at 1311. Indeed, it would be hard to imagine that Congress would want to protect the rights of foreign citizens to a larger degree than the citizens of this country. Indeed, the ITC itself recognized the applicability of *Compagnie de Saint-Gobain-Pont-A-Mousson*, stating that "[t]he distinction between service of notice and service of compulsory process is a crucial one under principles of **both** domestic and international law. *In re Certain Pers. Computers & Digital Display Devices*, Inv. No. 337-TA-606, Order No. 5, 2007 ITC LEXIS 705, *14-16 (Int'l Trade Comm'n. July 12, 2007) (emphasis added)[4]; *see Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d at 1313 ("Even within the United States, and even upon a United States citizen, service by registered U.S. mail is never a valid means of delivering compulsory process, although it may be a valid means of serving a summons and a complaint.")

---

Fed. R. Crim. P. 17(d)

[4] Notably, Section 333 includes a provision requiring the payment of witness fees in the same amount as witnesses subpoenaed in federal courts. 19 U.S.C.S. § 1333(e).

6

### III. Mr. Richman Was Never Served

ITC Respondents allege that on May 2, 2023, they sent a Federal Express package containing a copy of the subpoena to Mr. Richman at 8376 La Jolla Shores address. ECF No. 1-4 at 14. According to the Federal Express confirmation receipt, ITC Respondents requested a drop-off "No Signature Required" handling. ECF No. 1-4 at 72. The FedEx confirmation of delivery has no signature or any other indication that it was handled to a particular person to that address. In any case, on or about May 1, 2023, just a day before the package was sent, Mr. Richman moved out from that address. Richman Decl. ¶ 7.

ITC Respondents further alleged that they retained Mr. Zamora, a process server, to serve Mr. Richman personally. ECF No. 1-1 at 7. The affidavit of service submitted by Mr. Zamora raises many issues. First, the initial alleged service attempt took place on May 7, 2023, at the 8376 La Jolla Shores address after Mr. Richman moved out. ECF No. 1-4 at 80. According to the process server's affidavit, he had a brief contact with a female there. ECF No. 1-4 at 80. There is no description of the female, and there is no indication of what Mr. Zamora asked the female to do if anything. Mr. Zamora then alleged that he visited 8376 La Jolla Shores on May 8, 2023, and received no answer. ECF No. 1-4 at 80. As Mr. Richman explained, the person who was at the property on May 7 was his underaged daughter, who was a high school student at the time. Richman Decl. ¶ 13. On May 7, she called Mr. Richman and reported that someone was loudly banging on the garage door. *Id*. Naturally, she was scared, and for her safety, Mr. Richman instructed her not to open the door to anyone. *Id*. Clearly, the service attempt on May 7 failed both factually and legally based on the *Compagnie de Saint-Gobain-Pont-A-Mousson* holding.

On May 9, 2023, the process server visited the Torrey Pines campus of the University of California San Diego and was told that Mr. Richman does not work there. ECF No. 1-4 at 80. That is consistent with Mr. Richman's statement that he no longer worked at the University of

California. Richman Decl. ¶ 8. The two other addresses where other service attempts took place, 10616 Rancho Carmel Dr., San Diego, CA 92128, and 11790 Carmel Creek Road, Unit 301, San Diego, CA 92130, are not valid addresses either. Those are Mr. Richman's clients' addresses provided for Trademark Office customer communication. Richman Decl. ¶¶ 14, 15.

Mr. Zamora then alleged that he was staking out Mr. Richman but failed to indicate the location. Assuming that was again at 8376 La Jolla Shores, the contact with "two individuals Male looked Similar to Mr. Richmand (sic) but would not respond and fled behind a locked gate" was not a valid service attempt. ECF No. 1-4 at 80 (capitalization, spelling, and grammar are per the original). In any case, Mr. Richman had already moved out from that address by then. Richman Decl. ¶ 7. Notably, Mr. Zamora did not explain how he knew that the alleged individual "Males" looked like Mr. Richman and which of them looked like Mr. Richman. The process server did not assert that he had a picture of Mr. Richman or provide a description of the persons he saw. If Mr. Zamora downloaded Mr. Richman's picture from the internet, how did he know that the picture was the picture of Mr. Richman? For example, a Google pictures search shows a photo of a person named Merle Richman, a polo player for the U.S. Naval Academy team. https://collegiatewaterpolo.org/united-states-naval-academys-merle-richman/. That is not the same person as Respondent here. Richman Decl. ¶ 16. There is nothing in Mr. Zamora's declaration that would indicate whether the person in the photo was the person he allegedly saw.

Furthermore, Mr. Richman states that he moved out from 8376 La Jolla Shores by May 12, 2023. *Id*. ¶ 7 Nevertheless, the process server alleged that the female at that address "matched description of Richman's Spouse/partner." ECF No. 1-4 at 80. The process server failed to explain how he knew the description of Mr. Richman's spouse and failed to provide the description of the person he observed.

8

The last service attempt took place at 10616 Rancho Carmel Drive on May 15, 2023. ECF No. 1-1 at 7; ECF No. 1-4 at 80. There, the process server attempted to serve Mr. Richman's alleged partner but was advised that Mr. Richman was not at that address. Then, on May 23, 2023, after the deadline to file a motion to quash had passed, the process server attempted to serve Mr. Richman at 11790 Carmel Creek Road. That service attempt failed too, as Mr. Richman was not at that address. ECF No. 1-1 at 8; ECF No. 1-4 at 80. In the end, Mr. Zamora concluded that Mr. Richman was "evading service" even though he presented no evidence that he ever had direct contact with Mr. Richman. ECF No. 1-4 at 80.

Accordingly, none of the service attempts have succeeded.

**IV.    Mr. Richman Requires Time to Respond to the Subpoena**

Mr. Richman does not waive and reserves the right to have the subpoena served on him personally. Furthermore, after the subpoena is served, Mr. Richman will require time to review the responsive document to determine whether they are covered by the attorney-client privilege. As the ITC acknowledges, Mr. Richman was a prosecuting attorney for the patents at issue. Accordingly, the majority of documents other than patents' file history are covered by attorney-client privilege. Richman Decl. ¶ 22. Furthermore, in light of Mr. Richman's present occupation, where he works from a military base with no access to outside communication, compliance with the subpoena will impose an undue burden and will be vexatious and oppressive. *Id.* ¶ 20. Lastly, most of the documents requested by the ITC Respondents can be obtained from the parties to the ITC Action. *Id.* ¶ 21. Accordingly, Mr. Richman intends to move for a protective order or to quash the subpoena after it is served. As such, he will require sufficient time to prepare a motion for appropriate relief.

9

## CONCLUSION

Based on the foregoing, it is respectfully requested that the Court discharge Order to Show Cause, ECF No. 7, order that Petitioner serve the subpoena on Mr. Richman personally, and that Petitioner allow Mr. Richman sufficient time to move to quash or for protective order.

Dated: October 10, 2023

Respectfully submitted,

FISHERBROYLES LLP

By: /s/ *Gene M. Burd*
Gene M. Burd (D.C. Bar No. 1004330)
1200 G Street NW
Suite 800
Washington, DC 20005
Telephone: 202.750.0529
Email: gene.burd@fisherbroyles.com

*Counsel for Respondent*
*Merle W. Richman, III, Esq.*

4863-9554-9318, v. 1